```
               IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MARYLAND


HANNA J INVESTMENTS, LLC      *
                              *
v.                            *
                              *     Civil Action No. WMN-10-2255
RUSSELL JON DLIN              *
                              *
   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *
```

## MEMORANDUM

Before the Court is Defendant's motion to dismiss, ECF No. 4. The motion is fully briefed. Upon a review of the motion and the applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and that the motion should be denied.

## I. FACTUAL BACKGROUND

"There is little reason to believe that the permanency or happiness of a marriage bears any relation to the amount spent on the wedding." <u>In re Anonymous</u>, 252 N.Y.S.2d 946, 947 (Surr. Ct. 1964). Unfortunately, the facts giving rise to this action well illustrate the wisdom of that observation.

On or about June 7, 2009, Defendant Russell Dlin became engaged to Stacey Shapiro. According to the allegations in the Complaint, shortly thereafter, Defendant asked Plaintiff Hanna J

Investments, LLC[1] to bear the majority of the costs and expenses related to the wedding ceremony and reception. In exchange for Plaintiff's promise to bear those expenses, Defendant promised "that he would remain sexually faithful to Stacey Shapiro and uphold his marital duties by caring for and protecting her." Compl. ¶ 8. Defendant promised further that he "had not been with another woman since before [he] started dating Stacey" and that he would remain "in [a] monogamous relationship with Stacey." Id. ¶ 9(c)&(d). Throughout the period of the engagement, up through the date of the wedding, September 6, 2009, Defendant repeated those representations that he would remain faithful both before and during the marriage. According to the Complaint, in reliance on Defendant's promises, Plaintiff bore wedding expenses in excess of $150,000.

Sometime after the wedding, Plaintiff learned that Defendant had been engaging in sexual relationships with women other than Shapiro at the time he made the aforementioned promises, throughout the period of engagement, and after he was married to Shapiro. After this discovery, Plaintiff demanded reimbursement of the wedding expenses, but Defendant refused. Although not mentioned in the Complaint, Defendant relates in

---

[1] The Complaint does not explain Plaintiff's connection to the bride or groom or why it had an interest in paying the wedding expenses.

his motion that Shapiro has filed divorce proceedings against him in the Circuit Court of the City of Alexandria, Virginia.

Plaintiff filed suit in this Court on August 17, 2010, asserting the following causes of action: Breach of Contract (Count I); Negligent Misrepresentation (Count II); Promissory Estoppel (Count III); and Unjust Enrichment (Count IV).  In his motion to dismiss the Complaint in its entirety, Defendant contends that the Complaint is deficient due to Plaintiff's failure to include factual averments concerning:

> (1) privity between the parties; (2) the date of formation, terms, and parties to the alleged contract; (3) the date, circumstances surrounding, and person(s) to whom the alleged misrepresentations were made; and (4) the purpose, business function, and membership of Hanna J. Investments, LLC or reason that it sponsored a private wedding.

Mot. at 2.  While not raised at all in his motion, Defendant proceeds to argue at length in his reply memorandum that all of Plaintiff's claims are barred by Maryland's statutory ban on actions for breach of promise to marry, Md. Code Ann., Fam. Law. § 3-101 et seq., which is sometimes referred to as Maryland's "Heart Balm Act."

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, ---- U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell

Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556). "Detailed factual allegations" are not required, but allegations must be more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action[.]" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555). "[O]nce a claim has been stated adequately," however, "it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 563. In considering such a motion, the court is required to accept as true all well-pled allegations in the Complaint, and to construe the facts and reasonable inferences from those facts in the light most favorable to the plaintiff. Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).

### III. DISCUSSION

It would be an understatement to opine that the facts in this case, as alleged, are unusual. That an individual or business entity would extract from a groom an explicit promise to be sexually faithful to his bride-to-be in exchange for a commitment from that individual or entity to pay for the expenses of the wedding is not a typical ante-nuptial

4

arrangement.  For that reason, it is not surprising that the Court has been unable to discover a reported opinion decided under similar facts.

Also for that reason, it is unlikely that this decision will have precedential value beyond this unusual set of allegations or that it will "open the floodgates" to similar actions.  This is not a case where, after a marriage dissolves, those who paid for the wedding ceremony and reception decide to try to get their money back on what they now perceive to be a bad investment.  Here, it is alleged that specific representations and promises were made in order to induce another to agree to pay for the wedding expense in exchange for that agreement.

While these allegations are unusual, the Court cannot deem them so implausible that the Complaint must be dismissed under Twombly and Iqbal.  A claim for relief can be plausible and proceed through the motion to dismiss stage "even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."  Twombly, 550 U.S. at 556 (internal quotations omitted).  Accepting Plaintiff's allegations as true, the Court concludes that Plaintiff's claims can go forward.

In his motion, Defendant cites not a single case except for those that set out the basic legal standard for a motion to

dismiss. Defendant omits any recitation of the required elements that must be pled for the various causes of actions advanced by Plaintiff and offers no analysis of the Complaint in relation to those elements. Instead, Defendant faults the Complaint for omitting what he deems "critical contextual details" concerning: which particular agents of Plaintiff he might have dealt with, how he would have known that they were Plaintiff's agents, exactly when the agreement was reached, and what might have motivated Plaintiff to enter into the alleged agreement. Mot. at 4. While these all are certainly interesting questions and issues, under the Federal Rules of Civil Procedure, the Complaint need not contain detailed factual allegations as to all issues about which the reader might be curious. See Fed. R. Civ. P. 8(a)(2) (requiring only a "short and plain statement of the claim"); Twombly, 550 U.S. at 555 (complaint does not need "detailed factual allegations" to survive Rule 12(b)(6) motion).[2]

Turning to the elements of a breach of contract claim, "a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." Taylor v. NationsBank, N.A., 776 A.2d 645, 651

---

[2] Allegations related to some of these questions might have been necessary under Rule 9 of the Federal Rules of Civil Procedure had Plaintiff asserted a claim for fraud. Plaintiff, however, has not asserted such a claim.

6

(Md. 2001). The Complaint alleges that Defendant contractually obligated himself, inter alia, to remain sexually faithful to Shapiro. This he allegedly failed to do. Plaintiff has stated a claim for breach of contract.[3]

To state a cause of action for negligent misrepresentation, a plaintiff must assert the following elements:

> (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement;
>
> (2) the defendant intends that his statement will be acted upon by the plaintiff;
>
> (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury;
>
> (4) the plaintiff, justifiably, takes action in reliance on the statement; and
>
> (5) the plaintiff suffers damage proximately caused by the defendant's negligence.

Lloyd v. General Motors Corp., 916 A.2d 257, 273 (Md. 2007). Where, as here, the damages claims are solely economic in nature, the injured party must also demonstrate an "intimate nexus" between themselves and the defendant in order to give rise to a duty of care. Jacques v. First Nat. Bank of Maryland, 515 A.2d 756, 759-60 (Md. 1986).

---

[3] The Court will discuss, infra, whether this contract is barred under Maryland's Heart Balm Act. There may, as well, be additional arguments as to why such a contract is unenforceable, but Defendant has not raised those arguments or defenses.

Courts have held that this intimate nexus can be demonstrated by showing contractual privity or its equivalent. Weisman v. Connors, 540 A.2d 783, 791 (Md. 1988). Finding this intimate nexus, however, requires consideration of numerous factors.

> Liability [for negligent misrepresentation] arises only where there is a duty, if one speaks at all, to give the correct information. And that involves many considerations. There must be knowledge, or its equivalent, that the information is desired for a serious purpose; that he to whom it is given intends to rely and act upon it; that, if false or erroneous, he will because of it be injured in person or property. Finally, the relationship of the parties, arising out of contract or otherwise, must be such that in morals and good conscience the one has the right to rely upon the other for information, and the other giving the information owes a duty to give it with care. An inquiry made of a stranger is one thing; of a person with whom the inquirer has entered, or is about to enter, into a contract concerning the goods which are, or are to be, its subject, is another."

Weisman, 540 A.2d at 792 (internal quotations and alterations omitted).

Here, the Court finds sufficient allegations of an intimate nexus arising out of the contractual relationship between the parties that could give rise to a duty of care. Defendant intended Plaintiff to act on his representations by covering the wedding expenses, and Plaintiff took action in reliance on those representations, which turned out to be erroneous. As a result, Plaintiff was damaged when it paid for expenses it would not

8

have otherwise covered had it not relied on those representations. Plaintiff's negligent misrepresentation claim will not be dismissed at this time.

Promissory estoppel is "an equitable remedy that permits recovery where, in fact, there is no contract, but where circumstances are such that justice warrants a recovery." Pavel Enters., Inc. v. A.S. Johnson Co., Inc., 674 A.2d 521, 531 (Md. 1996) (describing promissory estoppel as a remedy allowing recovery when a contract claim would fail, e.g., for lack of consideration or violation of the statute of frauds).[4] To state a claim for promissory estoppel, a party must show a promise which the promisor should reasonably expect to induce action or forbearance on the part of a promisee or a third person and which does induce reasonable action or forbearance. D & G Flooring, LLC v. Home Depot U.S.A., Inc., 346 F. Supp. 2d 818, 823 (D. Md. 2004).

Unjust enrichment is another equitable doctrine that can provide a remedy where relief is not available under an enforceable contract. While promissory estoppel focuses on the detriment to the plaintiff, unjust enrichment focuses on the benefit unjustly retained by the defendant. To support a claim for unjust enrichment, a plaintiff must establish: (1) a benefit

---

[4] Obviously, Plaintiff is bringing this claim and his unjust enrichment claim as alternative remedies and, should Plaintiff establish a binding contract, these claims would be moot.

conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.  <u>Abt Associates, Inc. v. JHPIEGO Corp.</u>, 104 F. Supp. 2d 523, 535 (D. Md. 2000).  The measure of recovery for unjust enrichment is the gain retained by the defendant, not the loss to the plaintiff.  <u>Id.</u>

In moving to dismiss these last two claims, Defendant misconstrues the substance of Plaintiff's claim.  Positing a somewhat bleak view of the state of the institution of marriage in our society, he argues,

> the factual averments contained in the Complaint demonstrate that any "Wedding Expenses" that might have been paid by Plaintiff Hanna J. Investments were an unconditional gift to both Stacey Shapiro and Defendant Dlin.  It is commonly understood that a large portion of marriages in the United States are destined to end in divorce; Plaintiff does not contend that it acted with any expectation that the marriage between Defendant Dlin and Stacey Shapiro was impervious to this statistical fate.  Even assuming the assertions advanced by Plaintiff Hanna J Investments, <u>arguendo</u>, the circumstances compel a conclusion that any funds advanced for the wedding were intended to be gratuitous.

Reply at 8.  Defendant then faults the Complaint for not setting forth "any factual averment regarding an express declaration to

10

Plaintiff Dlin that the monies advanced for the wedding were conditioned on any successful period of wedlock." Id.

As alleged in the Complaint, however, the promises given by Defendant to induce Plaintiff to cover the wedding expenses relate not to the longevity of the marriage relationship, but to Defendant's conduct prior to and during the marriage. While Defendant's conduct and the longevity of the marriage are obviously related (as amply demonstrated by the allegations in the Complaint), Defendant cannot unilaterally recast the substance of Plaintiff's claims.

At this stage of the proceedings, the Court is satisfied that Plaintiff has alleged sufficient facts to allow these last two claims to go forward. In reliance on Defendant's promises that he was currently and would remain in the future sexually faithful to Shapiro, Plaintiff was induced to cover wedding expenses that it would not have otherwise agreed to pay. As to Plaintiff's unjust enrichment claim, there is certainly some question as to the measurement of the benefit retained by Defendant under these circumstances. Furthermore, whatever benefit inured to Defendant may not be equated to the detriment suffered by Plaintiff. The Court can infer, however, sufficient benefit to Defendant to permit the claim at least to survive the motion to dismiss.

Finally, the Court must briefly address the Heart Balm Act (the Act) issue raised in Defendant's reply memorandum. As did the legislatures of many other states in the 1930s and 1940s, Maryland's legislature enacted a statute abolishing the common-law cause of action for breach of promise to marry. See generally Miller v. Ratner, 688 A.2d 976 (Md. Ct. Spec. App. 1997). Maryland's statute, like the heart balm statutes of most states, also abolished causes of action for alienation of affections. The Act provides:

> § 3-102. Action for breach of promise to marry.
>
> (a) *In general*. - Unless the individual is pregnant, an individual:
>
> (1) has no cause of action for breach of promise to marry; and
>
> (2) may not bring an action for breach of promise to marry regardless of where the cause of action arose.
>
> . . .
>
> § 3-103. Action for alienation of affections.
>
> (a) *Right barred.* - An individual has no cause of action for alienation of affections.
>
> (b) *Remedy prohibited.* - An individual may not bring an action for alienation of affections regardless of where the cause of action arose.
>
> § 3-104. Contracts void; [].
>
> (a) *In general.* - A contract for payment or settlement of the claim abolished or prohibited by this title is void and unenforceable.

. . .

Md. Code Ann., Fam. Law §§ 3-102 to 3-104.

The statute also provides that it is remedial in nature and "shall be construed liberally to accomplish its purpose." Id. § 3-101. In passing the statute, the legislature explained that purpose.

> The remedies heretofore provided by law for the enforcement of actions based upon alleged alienation of affections and alleged breach of promise to marry, having been subjected to grave abuses, causing extreme annoyance, embarrassment, humiliation and pecuniary damage to many persons wholly innocent and free of any wrongdoing, who were merely the victims of circumstances and such remedies having been exercised by unscrupulous persons for their unjust enrichment, and such remedies having furnished vehicles for the commission or attempted commission of crime and in many cases having resulted in the perpetration of frauds, it is hereby declared as the public policy of the State that the best interests of the people of the State will be served by the abolition of such remedies.

Miller, 688 A.2d at 981 (quoting "Declaration of Public Policy of State" originally codified with the Act). See also Albinger v. Harris, 48 P.3d 711, 717 (Mont. 2002) (explaining that these causes of actions were abolished under Montana's heart balm act because it was thought that they "afforded a fertile field for blackmail and extortion by means of manufactured suits in which the threat of publicity is used to force a settlement" and furthermore, "even genuine actions of this type are brought more frequently than not with purely mercenary or vindictive motives

[and] that it is impossible to compensate for such damage with what has derisively been called 'heart balm'").

The contract at issue in this case does not fall within the expressed provisions of Maryland's Heart Balm Act. It is not alleged that Defendant promised to marry Shapiro and then reneged on that promise. Instead, Plaintiff alleges the breach of a separate and independent contract for the payment of certain expenses in exchange for certain behavior. Construing a similar heart balm act, the Pennsylvania Supreme Court opined,

> The abolition is confined to actions for breach of contract to marry, that is, the actual fracture of the wedding contract. It thus follows that a breach of any contract which is not the actual contract for marriage itself, no matter how closely associated with the proposed marriage, is actionable.

Pavlicic v. Vogtsberger, 136 A.2d 127, 131-2 (Pa. 1957).

Nor does the Court conclude, under the facts as alleged, that the remedial purpose of the Act would allow the Court to extend its provisions to the contract at issue. In discussing the Act's mandate for liberal construction to effectuate its purpose, the Maryland Court of Appeals opined that it could not read into that mandate "any broadening of the statute so as to make it operative beyond the field which it undertakes to cover." DiBlasio v. Kolodner, 197 A.2d 245, 249 (Md. 1964). "We find no reason for holding that the General Assembly did not mean exactly what it said - no more and no less - with regard to

14

the kinds of causes of action which it undertook to abolish."

Id.

    For these reasons, the Court finds that Defendant's motion to dismiss must be denied.  A separate order will issue.


_____/s/_____
William M. Nickerson
Senior United States District Judge


DATED:  December 8, 2010.